**J. Randolph Pickett**, OSB #721974
**Kimberly O. Weingart**, OSB #091407
**Kyle T. Sharp**, OSB #204886
**Rachel M. Jennings**, OSB #205474
**PICKETT DUMMIGAN WEINGART LLP**
Centennial Block, Fourth Floor
210 S.W. Morrison Street
Portland, OR 97204
Telephone:    (503) 226-3628
Facsimile:    (503) 227-2530
Email:    randy@pdw.legal
         kim@pdw.legal
         kyle@pdw.legal
         rachelj@pdw.legal

of Attorneys for Plaintiff

## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF OREGON

## PORTLAND DIVISION

| | |
|---|---|
| BENJAMIN ADAM RIEFF, Personal Representative of the ESTATE OF **MELVYN RIEFF**, Deceased,<br><br>Plaintiff,<br><br>v.<br><br>**DRI-EAZ PRODUCTS, INC.**, a Foreign Corporation; **ALL TEX INC.** dba **INLINE DISTRIBUTING COMPANY**, a Foreign Corporation; and **RESTORE TACTICS, INC.**, a Foreign Corporation,<br><br>Defendants. | Case No.<br><br>**COMPLAINT**<br><br>(Demand for Jury Trial) |

Plaintiff alleges:

**FIRST CLAIM FOR RELIEF**
(Against Defendants Dri-Eaz Products, Inc. and Inline Distributing Company)

**COUNT ONE**
(Wrongful Death – Strict Products Liability)

Page 1 – COMPLAINT

1.

At all material times hereto:

a) Benjamin Adam Rieff is the duly appointed and acting Personal Representative for the Estate of Melvyn Rieff, deceased, pursuant to a Limited Judgment dated June 22, 2023, entered in the Circuit Court of the State of Oregon for the County of Multnomah, Probate Department Case No. 23PB04953;

b) Plaintiff's decedent, was a resident of the city of Gresham, county of Multnomah, state of Oregon, and was seventy-seven (77) years of age at the time of his death on March 18, 2021, in the city of Gresham, county of Multnomah, state of Oregon, with a birth date of January 31, 1944;

c) Plaintiff's decedent Melvyn Rieff was survived by Margery L. Rieff, wife; Benjamin Adam Rieff, son; and Amanda Rieff Baker, daughter;

d) Defendant Dri-Eaz Products, Inc. ("DRI-EAZ") was a Washington corporation with a principal place of business located at 15180 Josh Wilson Road, in the city of Burlington, county of Skagit, state of Washington, authorized to do business and doing business as a designer and manufacturer of dehumidifiers, airmovers, structural drying systems, and air scrubbers for restoration, remediation, and portable environmental control;

e) Defendant All-Tex Inc., dba Inline Distributing Company ("INLINE") was a California corporation with a principal place of business located at 14093 Balboa Boulevard, in the city of Sylmar, county of Los Angeles, state of California, authorized to do business and doing business as a national distributor for restoration, remediation, construction, safety and disaster recovery supplies;

f) Defendant Restore Tactics, Inc. ("RESTORE") was a California corporation with a principal place of business located at 29255 Florabunda Road, in the city of Canyon Country, county of Los Angeles, state of California, and was not licensed to do business in the state of Oregon, but nevertheless performed business activities here as a provider of plumbing and restoration services.

2.

During the early morning of March 18, 2021, Melvyn Rieff, seventy-seven (77) years of age and his wife, Margery L. Rieff, seventy-three (73) years of age at the time, were sleeping in their bed in the master bedroom of their home, a two-story Santa Barbara mission-style residential structure with a center courtyard and a sunlit basement, located at 20101 N.E. Interlachen Lane, in the city of Gresham, county of Multnomah, state of Oregon (the "RIEFF HOME"). The Rieff Home had a living space, kitchen, and the master bedroom, which was located on the second floor on the south side of the building and exited to a second story balcony.

3.

At approximately 6:21 a.m., a fire detector in the Rieff home sounded an alarm which woke Margery Rieff. She got out of bed and opened the bedroom door and looked down the hallway.

4.

Margery L. Rieff alerted her husband, Melvyn Rieff, of the fire alarm and proceeded out onto the second-floor balcony of the master bedroom and called 9-1-1 to report the fire. While on the phone, Margery Rieff looked back into the master bedroom and saw Melvyn Rieff, who had woken up and got out of bed, proceed into the hallway toward the kitchen, calling out her name. The flames and smoke in the Rieff home had intensified, overwhelming and trapping Margery L. Rieff on the balcony.

5.

Kevin Dolphin, an off-duty firefighter with the Portland Fire Department, was driving by the Rieff home and saw the flames coming from the home. He arrived at the house and began to assist Margery L. Rieff. A few minutes later, at approximately 6:28 a.m., the Gresham Fire Department arrived at the scene of the building fire. Mr. Dolphin and the fire fighters used a ladder to access the second-floor balcony and rescue Margery L. Rieff. Mr. Dolphin entered the master bedroom at least four times without fire equipment to attempt to find and rescue Melvyn Rieff.

6.

Melvyn Rieff, however, never made it out of the building. Fire fighters found Melvyn Rieff in a prone position on the east side of the Rieff home in the kitchen. His body had extensive thermal burns to his back and lesser thermal damage to his front, with some sparing of damage on his legs, forearms, and abdomen that were pressed to the floor.

7.

The Multnomah County Medical Examiner was notified of Melvyn Rieff death at 7:11 a.m. The immediate cause of Melvyn Rieff death was ultimately determined to be inhalation of products of combustion from the house fire.

8.

At the time of the fire, the Rieff home was in the process of having all of the plumbing and pipes replaced. Much of the home furnishings had been moved into the middle of the living room during the restoration project, and dehumidifiers were running during the day to dry out the damp from leaky pipes.

9.

At all material times, defendant Restore was the restoration contractor that had been hired to perform the plumbing and piping work in the Rieff home. At the time of the work, defendant Restore did not have an active license in Oregon to perform the restoration work. During the restoration project, defendant Restore purchased and used a portable Dri-Eaz airmover and a portable Dri-Eaz 1200 dehumidifier (depicted below).



The Dri-Eaz 1200 dehumidifier was designed, sold, and manufactured by defendant Dri-Eaz and distributed by defendant Inline (the "DEHUMIDIFIER"). Defendant Restore previously purchased the Dehumidifier from defendant Incline.

10.

The night prior to the fire, defendant Restore had two employees working on site. The Restore crew left the Rieff home between 6:00 p.m. and 7:00 p.m. with the Dehumidifier plugged in and running in the entrance way.

11.

The Gresham Fire Department determined that the cause of the house fire was due to mechanical failure of the running Dehumidifier, caused by heat from the electrical wire of the Dehumidifier igniting the unit's plastic housing and spreading to the rest of the home. Margery Rieff told fire investigators that she had smelled smoke in the house the previous day.

12.

The Gresham Fire Department determined the fire originated in the hallway located south of the living room. The home furnishings and boxes of paintings that had been moved into the middle of the living room during the restoration project, which were covered in sheets of protective plastic to shelter them from debris from the project, expected when the concrete foundation was removed, provided an additional fire load that caused the fire to extend throughout the main level of the home.

13.

The Dehumidifier was designed, manufactured, distributed, tested, inspected, packaged, leased, and sold by defendants Dri-Eaz and Inline. Defendants, and each of them, knew the Dehumidifier would be used by purchasers without substantial change in its condition from the time of its manufacture and sale, and the Dehumidifier, was, in fact, in substantially the same condition at the time of its use in the Rieff home as it was at the time of its manufacture and the time of its sale to defendant Restore.

14.

Defendants Dri-Eaz, Inline, and Restore, and each of them, knew, or, in the exercise of reasonable care, should have known, home electrical fires account for an estimated fifty-one-thousand (51,000) fires annually. Each year in the United States, arcing faults are responsible for starting more than twenty-eight-thousand (28,000) home fires, killing and injuring hundreds of people, and causing over seven-hundred-million dollars ($700,000,000.00) in property damage.

15.

In recent years there have been a significant number of home fires caused by portable dehumidifiers. One of the most common failures in these appliances is overheating. The overheating can be caused by product defect, improper use, or poor maintenance.

16.

During Melvyn Rieff's final moments before his life ended in the inferno within his family home, caused by the aforementioned Dehumidifier, plaintiff's decedent suffered the following injuries that led directly to his death on March 18, 2021:

    a)    Extensive thermal burns to back;

    b)    Lesser thermal damage to front

    c)    Light charring over entire body;

    d)    Inhalation of carbon monoxide;

    e)    Laceration to the side of left eye.

17.

Defendants Dri-Eaz and Inline, and each of them, are strictly liable for designing, manufacturing, distributing, testing, inspecting, and leasing or selling the aforementioned Dehumidifier in an unreasonably dangerous condition for the use intended in one or more of the following particulars:

    a)    The Dehumidifier was not properly designed because the unit, and/or its component parts, overheated and caused an electrical fire which ignited the plastic housing of the Dehumidifier, which caused the Rieff home to catch fire;

    b)    The Dehumidifier was not properly designed because the unit, and/or its component parts, failed to contain any or adequate warnings about the overheating thereby causing an electrical fire which could ignite the plastic housing of the Dehumidifier, and the risk of a home fire, at a time when defendants, and each of them, knew, or, in the exercise of reasonable care, should have known, of the reasonably foreseeable and unreasonably dangerous risk of harm created by the absence of that safety feature;

    c)    The Dehumidifier was not properly inspected prior to its lease and/or sale, when proper inspection would have indicated the risk of the unit, and/or its component parts, overheating thereby causing an electrical fire which could ignite the plastic housing of the Dehumidifier, and the risk of a home fire;

    d)    The Dehumidifier was not properly tested prior to its lease and/or sale, when proper testing would have indicated the risk of the unit, and/or its component parts, overheating thereby causing an electrical fire which could ignite the plastic housing of the Dehumidifier, and the risk of a home fire.

18.

The negligence and/or fault of defendants, and each of them, in one or more of the particulars set forth herein, was a substantial factor in causing plaintiff's decedent Melvyn Rieff to incur profound existential fear, terror, and human pain, associated with recognizing that one's days on Earth have come to an end, during the period of time in which he rushed into the hallway and the living room of his family home, which had been set ablaze, as he called out his wife's name desperately hoping to rescue her, but not before succumbing to suffocation whereby his body no longer able to sustain human life within it, resulting in noneconomic damages in a reasonable amount to be awarded by the jury, but not to exceed the sum of $5,000,000.00.

19.

The negligence and/or fault of defendants, and each of them, in one or more of the particulars set forth herein, was a substantial factor in causing the beneficiaries of the estate, Margery L. Rieff, wife; Benjamin Rieff, son; and Amanda Baker, daughter, to never again have Melvyn Rieff's society or companionship as their husband [Margery Rieff] or father [Benjamin Adam Rieff and Amanda Rieff Baker], resulting in noneconomic damages in a reasonable amount to be awarded by the jury, but not to exceed the sum of $20,000,000.00.

20.

The negligence and/or fault of defendants, and each of them, caused the estate to incur the sum of $8,114.03 for the reasonable burial and funeral expenses of plaintiff's decedent.

21.

Plaintiff hereby demands a jury trial.

## COUNT TWO
### (Wrongful Death – Negligence)

22.

Plaintiff realleges and incorporates ¶¶1 through 21 of Count One of the First Claim.

23.

Defendants Dri-Eaz and Inline, and each of them, were negligent in one or more of the respects alleged in ¶17, as set forth in Count One of the First Claim for Relief.

24.

As a result of the negligence of defendants, and each of them, in one or more of the particulars set forth above, plaintiff's decedent suffered traumatic injuries that caused his death as set forth in ¶16 above, and the estate incurred damages as set forth in ¶¶18 through 20 above.

### SECOND CLAIM FOR RELIEF
### (Against Defendant Restore Tactics, Inc.)
### (Wrongful Death – Negligence)

25.

Plaintiff realleges and incorporates ¶¶1 through 16 and 18 through 21 of Count One of the First Claim for Relief.

26.

Defendant Restore was negligent and is liable in one or more of the following particulars:

a) In leaving the Dehumidifier plugged in and running overnight which caused the unit, and/or its component parts, overheated and caused an electrical fire which ignited the plastic housing of the Dehumidifier, which caused the Rieff home to catch fire;

b) In failing to properly use the Dehumidifier, when proper use would have prevented the risk of overheating thereby causing an electrical fire which could ignite the plastic housing of the Dehumidifier, and the risk of a home fire;

c) In failing to properly inspect the Dehumidifier, when proper inspection would have indicated and/or prevented the risk of overheating thereby causing an electrical fire which could ignite the plastic housing of the Dehumidifier, and the risk of a home fire;

d) In failing to properly test the Dehumidifier, when proper testing would have indicated and/or prevented the risk of overheating thereby causing an electrical fire which could ignite the plastic housing of the Dehumidifier, and the risk of a home fire;

e) In failing to properly maintain the Dehumidifier, when proper maintenance would have indicated and/or prevented the risk of overheating thereby causing an electrical fire which could ignite the plastic housing of the Dehumidifier, and the risk of a home fire;

f)  In storing the Rieff's home furnishings and paintings in the middle of the living room during the restoration project, causing there to be an additional fire load that caused the fire to extend throughout the main level of the Rieff home.

27.

As a result of the negligence of defendant Restore, in one or more of the particulars set forth above, plaintiff's decedent suffered traumatic injuries that caused his death as set forth in ¶16 above, and the estate incurred damages as set forth in ¶¶18 through 20 above.

WHEREFORE plaintiff prays for judgment against defendants, and each of them, in the sum of $25,008,114.03; for the Estate's costs and disbursements incurred herein; and for such other relief as the court deems just and equitable.

DATED this 11th day of August, 2023.

_____
J. Randolph Pickett, OSB #721974
randy@pdw.legal
Kimberly O. Weingart, OSB #091407
kim@pdw.legal
Kyle T. Sharp, OSB #204886
kyle@pdw.legal
Rachel M. Jennings, OSB #205474
rachelj@pdw.legal
PICKETT DUMMIGAN WEINGART LLP

of Attorneys for Plaintiff

Page 9 – COMPLAINT